CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

July 17, 2025

LAURA A. AUSTIN, CLERK
BY: s/B. McAbee
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 4:12-cr-00001-3 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| TREMAIN THOMAS | ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to reduce sentence filed by defendant Tremain Alando Thomas by and through counsel. (Dkt. No. 521.) Thomas asks the court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) on compassionate release grounds. The United States has filed an opposition (Dkt. No. 533), Thomas has filed a reply (Dkt. No. 537), and the motion is ripe for disposition. For the reasons discussed herein, the court will deny Thomas's motion.

**I. BACKGROUND**

Thomas is currently serving a 300-month sentence for his role in a drug-related robbery which ended in a murder. The idea for the robbery was hatched by codefendant, Rodney Hairston. Hairston sought assistance from his codefendants—all of whom were members of the 9-Tre Bloods gang—to rob two customers who were purchasing marijuana from him, Demarcus Hairston (Demarcus) and Akoran Murphy. Thomas was a captain in the gang. Although Thomas was not part of the original plan, on the day of the robbery, Keith Hairston and other gang members picked up Thomas to join them. He assisted in creating an action plan (which involved ambushing the customers at an intersection), and he discussed with others that they would have to shoot or kill Demarcus in order to rob him of the marijuana. (PSR ¶¶ 13, 14.) Thomas specifically stated that "ain't no one going to live anyway." (*Id.* ¶ 14.)

While the customers were purchasing the marijuana from Hairston, Keith and Thomas

got out of the car. Thomas walked down the left side of the road, and Keith concealed himself behind some bushes. After the customers left Hairston's home and the car approached, Thomas pretended to be hurt by limping down the road. The customers' car stopped and asked if he needed a ride, but Thomas declined. Then, as the car drove toward the intersection, Thomas and Keith opened fire on Demarcus's vehicle, hitting both Demarcus and Murphy. After Murphy returned fire and the shooting ended, the victims' car rolled into a ditch and came to rest. Demarcus was able to exit the vehicle and was picked up by a passing motorist and taken to the hospital. Murphy was on the front passenger seat severely injured and moaning. Keith grabbed the bag of marijuana from underneath Murphy's body. Murphy later died of gunshot wounds to his head and chest.

Thomas pled guilty to counts I and III of the second superseding indictment. Count I was a charge of conspiracy to distribute marijuana, and Count III charged him with possession of a firearm in furtherance of a drug trafficking crime and causing a death, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j). In exchange for Thomas's guilty plea, the government agreed to move for a third point for acceptance of responsibility, move to dismiss the remaining count, and to not seek either a role enhancement or obstruction of justice.

Senior United States District Judge Jackson L. Kiser sentenced Thomas on March 1, 2013. The court calculated the sentencing guideline range for Count III of 300 months to life imprisonment, to be followed by the mandatory 60-month sentence on Count I. (Sent. Tr. 2–3, Dkt. No. 540; *see also* Statement of Reasons 1, Dkt. No. 259 (showing a total sentence of 360 years to life).) Judge Kiser sentenced Thomas to 240 months on Count III, to be followed by a consecutive 60-month sentence on Count I.

At the time Thomas was sentenced, the prevailing jurisprudence was that § 924(j)

2

incorporated § 924(c)'s penalty provisions; thus, a sentence imposed for a § 924(j) conviction was required to run consecutive to any other sentence. Indeed, the PSR states that the term "must be imposed consecutively." (PSR ¶ 70.) Rodney Hairston's counsel argued to the contrary at his sentencing,[1] but the sentencing court found persuasive the reasoning of circuits that had held that consecutive sentences were required. (R. Hairston Sent. Tr. 12, Dkt. No. 534.)

In 2023, however, the United States Supreme Court issued *Lora v. United States*, 599 U.S. 453 (2023). In resolving a circuit split on the issue, the *Lora* Court held that sentences under § 924(j) are not subject to § 924(c)'s bar on concurrent sentences. 599 U.S. at 464. Thus, if Thomas were being sentenced today, the court would have the discretion to run the two sentences partially or fully concurrent.

## II. DISCUSSION

### A. Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part,[2] the statute

> authorizes a court, in its discretion, to reduce a term of imprisonment after it has (1) considered the [18 U.S.C.] § 3553(a) factors for imposing a sentence, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)(1)(A)); *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). In 2023,

---

[1] The same argument was not made on Thomas's behalf. (*See generally* Sentencing Tr., Dkt. No. 540.)

[2] Prior to the First Step Act of 2018, only the Bureau of Prisons could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

3

the Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances which may individually or in combination constitute "extraordinary and compelling" reasons for a sentence reduction. *See* U.S.S.G. § 1B1.13. Thomas's motion is governed by that policy statement. *Crawley*, 140 F.4th at 170.

The defendant bears the burden of showing that extraordinary and compelling reasons exist. *See United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release"). And "[a] movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence." *Centeno-Morales*, 90 F.4th at 279.

**B. Exhaustion**

Section 3582(c) also requires administrative exhaustion before a defendant may file a motion requesting relief under it, although that requirement is a "'non-jurisdictional claim-processing rule' that can be waived or forfeited if not timely raised." *United States v. Davis*, 99 F.4th 647, 653 n.2 (4th Cir. 2024) (quoting *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021)). Specifically, a defendant must request that the BOP bring a motion on his behalf and then either "fully appeal" the BOP's failure to do so or allow 30 days to lapse without a response. § 3582(c)(1)(A).

Thomas asserts that he has properly exhausted his administrative remedies. The United States does not contest that assertion and thus has waived any challenge to exhaustion. The court turns next to whether Hairston has shown "extraordinary and compelling" circumstances so as to render him eligible for a sentence reduction.

**C. Extraordinary and Compelling Reasons**

Thomas's compassionate release motion requests relief, asserting that he has established "extraordinary and compelling" circumstances by satisfying U.S.S.G. § 1B1.13(b)(6). In that provision, the Sentencing Commission has noted that a defendant can establish the requisite circumstances based on a change in the law only if he "received an unusually long sentence and has served at least 10 years of the term of imprisonment" and where the change "would produce a gross disparity" between his current sentence and "the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). *See also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (noting that a nonretroactive intervening change in the law, which would result in a lower sentence if a defendant were sentenced today, can constitute an extraordinary and compelling reason for compassionate release). The guidelines otherwise instruct that "[e]xcept as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." U.S.S.G. § 1B1.13(c).

The United States makes a number of arguments in opposing relief. First, it contends that an intervening judicial decision like *Lora* is not a change in the law. Instead, *Lora* merely "interpret[ed] existing law in a manner that supports a claim of legal error." (Resp. 10.) Stated differently, it did not change the law, but simply "explain[ed] what a statute '*always*' meant.'" (*Id.* at 11 (quoting *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313–14 & n.12 (1994).) The government insists that *Lora* simply means that the sentencing court erred in concluding that it was required to impose a consecutive sentence and such an error cannot be corrected through a §3582(c)(1)(A)(i) motion, but it instead must be brought through the standard process for collateral review. (*Id.* at 12 (collecting authority).) *See, e.g., United States v. Rogers*, No. 16-cr-

5

00530 (JMA), 2024 WL 866172, at *2 (E.D.N.Y. Feb. 28, 2024) (construing a claim for a resentencing in light of *Lora* as "[a]t bottom" a challenge to "the imposition of his sentence" which must be brought in a § 2255 motion). *But see, e.g.*, *United States v. Battle*, No. 2:15-CR-124-PPS-JEM, 2024 WL 4589670, at *2–3 (N.D. Ind. Oct. 28, 2024) (addressing claim brought pursuant to *Lora* in context of compassionate release motion); *United States v. Temple*, No. 4:15-CR-00230-JAR-1, 2024 WL 4692018, at *2 (E.D. Mo. Nov. 5, 2024) (same); *United States v. Draper*, No. 3:12-CR-00004-MMD-CSD, 2024 WL 4007198, at *2 (D. Nev. Aug. 30, 2024) (same), appeal pending, No. 24-5588 (9th Cir.).

Second, the United States argues that the sentencing commission exceeded its congressionally-delegated authority in promulgating subsection (b)(6). (Resp. 13–23.)

Third, the United States posits that even if (b)(6) were valid, Thomas does not satisfy the provision because any possible change to his sentence does not produce a "grossly disparate sentence." (Resp. at 23–24.) The *maximum* possible difference for Thomas would be that he would receive a 240-month sentence instead of 300 months. In that case (of maximum relief), his sentence would still be 80% of his current sentence. Unsurprisingly, courts do not agree as to whether that would be a "grossly disparate" sentence. *Compare, e.g.*, *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines" that would have applied under a subsequent case) *and United States v. Huggins*, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity") *and United States v. Robinson*, Case No. CR 01-103-01-JJM-LDA, 2024 WL 1557770, at *3 (D.R.I. Apr. 10, 2024) (difference between 20-year and a 15-year sentence was a gross disparity) *with United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six

6

year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").

The court recognizes that, typically, it should first determine whether Thomas has established compelling and extraordinary circumstances. Here, however, that determination would require significant discussion and analysis, particularly in addressing the parties' *Lora*-based arguments. And the court concludes that even if Thomas could establish extraordinary and compelling reasons under § 3582, the court would not reduce his sentence in light of the § 3553(a) factors. Thus, the court assumes arguendo that Thomas could show extraordinary and compelling circumstances, and it explains next why the § 3553(a) factors do not support granting Thomas any relief.

## D. Section 3553(a) Factors

Even where a court finds a defendant is *eligible* for compassionate release, the court still must determine whether one is warranted, which requires a consideration of the 18 U.S.C. § 3553(a) factors. *Crawley*, 140 F.4th at 169. Those factors include:

- the nature and circumstances of the offense;
- the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational, vocational and other correctional treatment services;
- the kinds of sentences available and the sentencing range for his offense; and
- the need to avoid unwarranted sentence disparities.

18 U.S.C. § 3553(a).

Nearly all of these factors support keeping Thomas's sentence the same. First of all, the nature and circumstances of the offense here strongly counsel against any reduction in sentence. This offense resulted in the death of a man and the wounding of another. Thomas was one of the

7

two triggermen, and he had stated during the planning stages that he did not expect the victims to live.

Although the sentencing court offered a less detailed description at Thomas's sentencing, its comments about the circumstances of the offense from Rodney Hairston's sentencing are equally apt here. The court stated:

> I can't imagine a more serious case than this was. It resulted in a premeditated murder, a lying-in-wait ambush-type murder. And that is about as serious as a murder can be. And I think in sentencing Keith Hairston that point was made.[3]  But it can't be made too often. I think the defendant's participation in the scheme makes it a very serious crime on his part.

(R. Hairston Sent. Tr. 73–74, Dkt. No. 534.) Because of the seriousness of the offense and also the fact that Thomas was one of two triggermen, a lengthy sentence is necessary to reflect the seriousness of the offense, promote respect, provide just punishment, and to deter criminal conduct.

Thomas's history and characteristics are mixed. He was a young man (20 years old) at the time of the offense. But he had joined a gang at age 16 and worked his way up to the position of captain. At the time of the offense, he was already a criminal history category of III, and one of his prior offenses was for carrying a concealed weapon. (PSR ¶¶ 56, 53.) The description of his other prior offenses and arrests show some past propensity for violence and a lack of ability to control his anger. (*Id.* ¶¶ 50, 52, 57; *see also id.* ¶ 64 (Thomas acknowledging he has been quick to anger and expressing desire for treatment).)

In his favor, though, he has a near-spotless disciplinary record in his 14 years of

---

[3] Keith Hairston, one of the triggermen, was sentenced to 600 months—540 months on Count Three and 60 months consecutive on Count One. As noted, Thomas was sentenced to a total of 300 months—240 months on Count Three and 60 months consecutive on Count One.

incarceration—two incidents of non-compliance and one non-violent disciplinary incident—and the last of those occurred in 2019, more than five years ago. That is an excellent record and demonstrates an ability and willingness to conform his conduct to the law and to rules. The court also commends Thomas for his completion of many courses—including academic, anger management, and substance abuse treatment—for obtaining his G.E.D., and for taking courses designed to learn skills that will allow him to contribute to society upon his release. (Mot. 3 & Exs. A–F.)

Despite his more recent favorable conduct, other sentencing factors do not favor a reduced sentence. For example, lowering Thomas's sentence would result in an unwarranted sentencing disparity, which the court must try to avoid. Indeed, the sentencing court explained that it was crafting a sentence for Thomas that took into account the relative culpability and sentences of other defendants, as well as other factors bearing on an appropriate sentence. (Sent. Tr. 30–31.) Changing Thomas's sentence at this point would upset that balance, imposed very intentionally by the sentencing court. Further, granting Thomas his requested reduction and running the sentences fully concurrent would fail to recognize the additional harm that came from the conduct underlying the second offense.

Lastly, a very significant sentence is needed here to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to deter criminal conduct. The court concludes that Thomas's sentence is sufficient, but not greater than necessary, to accomplish those goals. Accordingly, the court will deny his motion.

### III. CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Thomas's motion for a reduced sentence based on the compassionate release statute (Dkt. No. 521) is DENIED. The clerk is

directed to provide a copy of this order to all counsel of record.

    Entered: July 17, 2025.

                                                   /s/ Elizabeth K. Dillon
                                                   Elizabeth K. Dillon
                                                   Chief United States District Judge

Case 4:12-cr-00001-EKD    Document 541    Filed 07/17/25    Page 10 of 10    Pageid#: 2788